UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AUSENCO CHILE LTDA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) ) Civil Action No. ___1:24-cv-6536___ |
| MANTOVERDE S.A. AND AUSTRALIA AND NEW ZEALAND BANKING GROUP LIMITED, | ) ) ) ) |
| Defendants. | ) ) ) ) ) |

**COMPLAINT AND APPLICATION FOR TEMPORARY RESTRAINING ORDER**

Plaintiff Ausenco Chile Limitada ("Ausenco Chile"), through its undersigned attorneys, JONES DAY, files this verified petition for temporary injunctive relief against Defendants Australia and New Zealand Banking Group Limited ("ANZ Bank") and Mantoverde S.A. ("Mantoverde"). This Petition is being filed in connection with an ICC arbitration which is being initiated contemporaneously against Defendant Mantoverde S.A.

The injunctive relief requested is sought pursuant to FRCP 65(a) in aid of an arbitration and to preserve the *status quo* pending a decision by an emergency ICC arbitrator pursuant to Section 35.5 of the agreement between Ausenco Chile and Mantoverde, which permits a party to seek judicial relief "in aid of an arbitration under the Parties' agreement." *See e.g., Thales Avionics, Inc. v. L3 Tech., Inc.*, 2024 WL 815845, at *5 (S.D.N.Y Feb. 27, 2024) (noting that federal courts may issue injunctions "in aid of arbitration" in order to "preserve the *status quo* pending arbitration").

**INTRODUCTION**

1.      This Application for a Temporary Restraining Order is to enjoin a fraudulent draw on a letter of credit and thereby prevent irreparable financial harm to one of Australia's largest engineering and construction companies, Ausenco Limited, and its Chilean subsidiary, Ausenco Chile Ltda.

2.      This dispute arises out of the construction of a massive copper mining plant located in the Atacama Region of Chile (the "Project"). Mantoverde contracted with Ausenco Chile to construct the Project on a lumpsum, turnkey basis under the terms of an engineering, procurement and construction ("EPC") Contract. *See* Ex. A, EPC Contract Excerpts.

3.      The Project, which commenced in early 2021, was for the construction of a 31,600 tons per day copper concentrator plant and related infrastructure. It took over three years, 1,900 laborers, and over $500 million to complete the construction.

4.      The final completion milestone for construction work under the EPC Contract was called "Facility Practical Completion," which represents the date that the Project is substantially complete and ready for commercial operation. On that date, the primary work is deemed complete, and Ausenco Chile's warranty period would commence.

5.      In addition, as part of the EPC Contract, Ausenco Chile provided Mantoverde a Standby Letter of Credit ("SLC"), issued by ANZ Bank in the value of $50,229,961.30, to guaranty its performance on the Project up and though the date of Facility Practical Completion. (Ex. B, Standby Letter of Credit) The SLC has an expiration of <u>August 31, 2024</u>.

6.      On <u>August 7, 2024</u>, several weeks *before* the SLC expires, Mantoverde deemed Ausenco Chile had achieved Facility Practical Completion, which Mantoverde formally confirmed in writing by letter to Ausenco Chile. (Ex. C, August 7 Letter from Mantoverde).

7. Under the EPC Contract, upon the achievement of Facility Practical Completion, the value of the SLC was to be reduced from 10% of the contract value to 5% of the contract value, for the duration of the contractual warranty period. That is, the SLC is reduced by half upon achievement of Facility Practical Completion.

8. On <u>August 22, 2024</u>, and consistent with the terms of the EPC Contract, Ausenco Chile tendered Mantoverde with an amended SLC reduced to 5% of the EPC Contract value ($26,746,407.00), with an extended expiration date of August 31, 2025, **all in strict conformance with the security requirements under the EPC Contract**. (Ex. D, Proposed SLC Amendment) To be clear, Ausenco Chile fully tendered its performance obligations under the EPC Contract with respect to proving the requisite financial security.

9. Contrary to both the express language in the EPC Contract and widespread industry practice, Mantoverde wrongfully refused to sign the SLC amendment and demanded that Ausenco Chile procure an entirely new SLC altogether (the "Replacement SLC"), *on the exact same terms as the amendment it already had in hand,* which would require substantially more time than amending the existing SLC.

10. Ausenco Chile is nevertheless presently working to obtain the Replacement SLC in order to comply with Mantoverde's wrongful, extra-contractual demand, and despite the fact that Mantoverde, by simply signing the Replacement SLC it has in hand, could immediately and fully secure its interests.

11. Despite Ausenco Chile's good faith efforts, since the current SLC expires August 31, 2024 (a Saturday), Mantoverde declared its intent to draw the entire value of the SLC, totaling $50,229,961.30, prior to expiration (*i.e.*, by Friday, August 30, 2024).

3

12. Mantoverde has represented that the basis upon which it will seek to the draw upon the SLC is that Ausenco Chile is in alleged default of its obligations to provide a Replacement SLC, as opposed to the properly amended SLC that Ausenco Chile tendered, but which Mantoverde has refused to sign.

13. Critical here, in attempting to draw upon the SLC, Mantoverde has or will necessarily make materially false statements of fact to the issuer bank, ANZ Bank, regarding the basis of any default by Ausenco Chile, with the intent to induce the bank to honor the presentment.

14. Mantoverde has or will necessarily make false statements to ANZ because, under the express terms of both the EPC Contract and the SLC, Mantoverde must, at the time presentment to ANZ Bank, "**state the <u>respect in which the applicant is in breach</u> of its obligations under the Underlying Relationship [the EPC Contract]**."

15. Such statement by Mantoverde would be knowingly false when made because, under the EPC Contract, Mantoverde was required to satisfy express conditions precedent to declaring such a default, but has not done so.

16. As the express conditions precedent to declaring Ausenco Chile in default have not been satisfied, any such statement made by Mantoverde to ANZ to that effect would be knowingly false, and indeed fraudulent, since but for the misrepresentation ANZ would be unable to make the payment. The statement is also fraudulent because Ausenco Chile is not in fact in Default since it tendered full performance under the EPC Contract.

17. Mantoverde has or will necessarily make a second false statements to ANZ because, in making its presentment, Mantoverde will claim as the basis of the default Ausenco Chile's alleged failure to tender the Replacement SLC. This representation is false, since Mantoverde indeed has the Replacement SLC, which ANZ Bank provided on August 22, 2024. Mantoverde

makes a material misrepresentation of fact in claiming it has not received an instrument that, in fact, it has in hand. Mantoverde simply refuses to sign the Replacement SLC, and instead demands the bank issue another letter of credit *on the exact same terms* as the one already in its possession. The foregoing misrepresentation is fraudulent, as it is intended to induce ANZ Bank to pay the SLC under false factual pretenses.

18. Unless enjoined, Mantoverde's wrongful action of drawing the full amount of the SLC based upon a fraudulent claim will cause Ausenco Chile irreparable harm.

19. Specifically, unless enjoined, Mantoverde's wrongful presentment of the SLC will: (1) result in an immediate reimbursement obligation to ANZ Bank in the full amount of $50,229,961.30; which (2) will, by operation of various contracts, induce cross-defaults across the credit facilities servicing both Ausenco Chile and its parent-company, Ausenco; (3) these cross-defaults would trigger the rights of Ausenco's lenders to demand immediate repayment; (4) Ausenco's liquidity would become instantly constrained, and funding available to progress operations for Ausenco's global construction projects would cease; and (5) Ausenco's income stream would contract and its repayment obligations would be increasing, threatening Ausenco's ability to continue as a going concern.

20. The balance of equities favor Ausenco Chile, which presented Mantoverde with a compliant SLC amendment that fully complies with and protects Mantoverde under the terms of the EPC Contract, and moreover, represented to Mantoverde it would provide the requested Replacement SLC, even though not required by the EPC Contract. Thus, the status quo will remain unchanged for Mantoverde with or without an injunction. In contrast, without an injunction, Ausenco Chile and its parent will go out of business.

21.     The consequences of allowing Mantoverde to proceed on its intended, fraudulent course are irreversible to Ausenco and its 2,000 employees across the globe.

22.     The Court should therefore (1) enjoin Mantoverde from drawing on the SLC and (2) enjoin ANZ Bank from honoring any such draw in the event one has already been submitted at the time that this Petition is filed.

## JURISDICTION, VENUE AND GOVERNING LAW

23.     Petitioner Ausenco Chile Limitada is a Chilean company duly incorporated under the laws of the country of Chile with its principal place of business at Av. Las Condes 11283, Piso 6, Las Condes, Santiago, Región Metropolitana, Chile

24.     Respondent Australia and New Zealand Banking Group Limited ("ANZ Bank") is a banking and financial services company headquartered in Melbourne, Victoria, Australia. In the United States, ANZ Bank operates a branch located at 277 Park Avenue, 31st Floor, New York, New York 10172.

25.     The Court has personal jurisdiction over ANZ Bank because ANZ Bank does business systematically and continuously through its New York branch. *See* N.Y. CPLR § 301; *JW Oilfield Equip., LLC v. Commerzbank, AG*, 764 F. Supp. 2d 587, 592–93 (S.D.N.Y. 2011) (finding that the court had general personal jurisdiction over a foreign bank that did business in New York systematically and continuously through its New York branch).

26.     Respondent Mantoverde S.A. is a Chilean company duly incorporated under the laws of the country of Chile with its principal place of business at Antonio Bellet 292, Of.706, Providencia, Santiago, Chile.

27.     Under Section 35.4(a) of the EPC Contract, Mantoverde and Ausenco Chile agreed to arbitrate any disputes in New York, New York.

28. Consent to arbitration in New York is a consent to personal jurisdiction of the courts in New York. *See Philipp Bros. Div. of Engelhard Mins. & Chemicals Corp. v. El Salto, S.A.*, 487 F. Supp. 91, 93 (S.D.N.Y. 1980). The "Second Circuit has repeatedly held that courts retain the power, and the responsibility, to consider applications for preliminary injunctions while a dispute is being arbitrated." *Gen. Mills, Inc. v. Champion Petfoods USA, Inc.*, No. 20-CV-181 (KMK), 2020 WL 915824, at *3 (S.D.N.Y. Feb. 26, 2020).

29. Federal courts have jurisdiction over actions falling under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("New York Convention"), regardless of the amount in controversy. 9 U.S.C. § 203. An application for injunctive relief in aid of arbitration pursuant to an agreement in a commercial contract falls under the New York Convention. See 9 U.S.C. § 202. Moreover, "[w]here the parties have agreed to arbitrate a dispute, a district court has jurisdiction to issue a preliminary injunction to preserve the status quo pending arbitration." *Benihana, Inc. v. Benihana of Tokyo, LLC*, 784 F.3d 887, 894–95 (2d Cir. 2015).

30. This Court has federal question subject matter jurisdiction because this an application for injunctive relief under FRCP 65(a) in aid of a pending arbitration with the ICC pursuant to an arbitration clause in the Agreement. See Agreement § 35.4. This Court has personal jurisdiction over Mantoverde because Mantoverde agreed to consent to arbitration in New York, New York and agreed to submit to the jurisdiction of the United States District Court for the Southern District of New York relating to or in aid of an arbitration arising under the agreement. *See* Agreement §§ 35.4, 35.5  This Court has personal jurisdiction over ANZ Bank because ANZ Bank does business systematically and continuously through its New York branch. *See* Complaint Ex. B.

31.     Venue in this Court is proper pursuant to 9 U.S.C. §§ 9 and 204 because the arbitration clause applicable to the underlying dispute between the Parties designated New York, New York as the seat of arbitration (*see* Agreement § 6.4) and because the Parties agreed to submit to the jurisdiction of the United States District Court for the Southern District of New York relating to or in aid of an arbitration arising under the agreement (see Agreement § 35.5).  Venue is also proper pursuant to 28 U.S.C. § 1391 because ANZ Bank does continuous and systematic business sufficient to confer personal jurisdiction in New York, New York.

32.     The Parties' Agreement, including the arbitration clause, is governed by New York law.  Agreement § 41.1.

## STATEMENT OF FACTS

**I.      The Project, the EPC Contract, and Mantoverde's Breach.**

29.     Ausenco Chile is the Chilean subsidiary of Ausenco Limited ("Ausenco"), which is a global construction and engineering company headquartered in Brisbane, Australia. Ausenco has over 2,000 employees and primarily designs and constructs complex projects, such as mining facilities, pipelines, and water reservoirs often in remote parts of the world.

30.     Ausenco Chile focuses on planning, designing, and constructing mining facilities. Chile is the world's largest producer of copper. Ausenco Chile has extensive experience with copper mining facilities.

31.     Mantoverde owns and operates an open-pit copper mine located in the Atacama region of Chile.

32.     Mantoverde sought to significantly expand its copper production, and in 2021 awarded Ausenco Chile an EPC Contract valued at over $500 million to construct an expanded copper processing plant along with necessary infrastructure.

8

33. Under the terms of the EPC Contract, Ausenco Chile has responsibility to engineer, procure, and construct the scope of work on a lump-sum, turnkey basis.

34. Under Section 25.1(a) of the EPC Contract, Ausenco Chile agreed to provide Mantoverde with "Performance Securities" expressly for the purpose "of ensuring the Contractor's due and proper performance of this agreement."

35. The mechanics of the Performance Securities are outlined in Schedule 14 of the EPC Contract. Schedule 14 provides a three step process for the Performance Securities:

   i. **Performance Security No. 1.** This is a Standby Letter of Credit with a value of **10%** of the Contract Price. It is released upon the achievement of the Facility Practical Completion and when Ausenco Chile provides Performance Security No. 2.

   ii. **Performance Security No. 2.** This is a Standby Letter of Credit with a value of **5%** of the Contract Price. It is released upon the achievement of Commercial Acceptance.

   iii. **Performance Security No. 3.** This is a Standby Letter of Credit with a value of 150% of the remaining warranty or punch work to be completed. It is released when the Defects Liability Period expires.

36. Importantly, the EPC Contract provides that all three Performance Securities are **<u>identical</u>** except for: (1) the value (which decreases over time) and (2) the expiration date (which is extended based on the progress of the Project).

37. Indeed, the EPC Contract provides for the *same* "approved" letter of credit form to be used for each of the three Performance Securities provided. *See* Schedule 14, Section 1.3.

38. At the commencement of the Project, Ausenco Chile provided Performance Security No. 1 in the form of an SLC prescribed by the EPC Contract. The SLC contained an expiration date of August 31, 2024.

39. By letter dated August 7, 2024, Mantoverde deemed that Ausenco Chile had achieved Facility Practical Completion.

40. Under the EPC Contract, Ausenco Chile's achievement of Facility Practical Completion transitioned the parties to Performance Security No. 2 and allowed Ausenco Chile to reduce the SLC to 5% of the Contract Price.

41. Given that the form for the SLC for Performance Security No. 2 is identical to that of Performance Security No. 1, Ausenco Chile transmitted an amendment "stepping-down" the value of the SLC for Performance Security No. 1 from $50,229,961.30 to $26,746,407.00. In other words, Ausenco Chile properly tendered a conforming Performance Security No. 2.

42. In addition, the proposed amendment constituting Performance Security No. 2 extended the SLC's expiration from August 31, 2024 to August 31, 2025.

43. **In this respect, Ausenco Chile tendered to Mantoverde a fully conforming SLC for Performance Security No. 2: the SLC tracked the mutually approved form in the EPC Contract, was in the amount required, and covered the expected period through the achievement of Commercial Acceptance.**

44. Not only that, but Ausenco Chile's proposed amendment was consistent with longstanding industry practice. In EPC contracting, standby letters of credit are commonly issued, particularly when international parties are contracting with each other. Ausenco, as an EPC contractor, manages a portfolio of letters of credit. Typically, as a Project achieves certain milestones, the value of the letter of credit is reduced, to reflect the owner's diminishing risk of an

10

incomplete project. Instead of issuing a *new* letter of credit each time it needs to be reduced, the letter of credit will be "stepped-down" or reduced in value as the Project nears completion with a standard one-page amendment. This is widespread industry practice and custom.

45. Thus, when Mantoverde (1) rejected Ausenco Chile's tender of a fully conforming SLC for Performance Security No. 2, which, consistent with industry practice was in the form of a step-down amendment, and (2) demanded the procurement of new letter of credit, Ausenco Chile was shocked.

46. To be clear, Mantoverde is demanding that Ausenco Chile procure a new SLC, but which would be identical to the one that Ausenco Chile offered.

47. Ausenco Chile is attempting to secure a new letter of credit for Performance Security No. 2 to appease Mantoverde, but Ausenco Chile may not be able to secure a new letter of credit before the SLC expires.

48. Since Mantoverde is unwilling to sign the amendment to extend the SLC to August 31, 2025, the SLC may expire on August 31, 2024 before a new SLC for Performance Security No. 2 is in place. As a result, Mantoverde is threatening to draw on the entire value of the SLC.

49. To be clear, Mantoverde threatened to draw on the entire value of the original SLC, claiming that the impending expiration of the existing LC allowed it to do so ***even though Ausenco Chile had tendered an amendment extending the LC for an additional year.***

50. Mantoverde's impending draw on the SLC requires Mantoverde to make material misrepresentations to ANZ Bank in order to induce it to pay funds to Mantoverde.

51. First, Mantoverde must represent to ANZ Bank that Ausenco Chile is in breach of its obligations to Mantoverde. However, the EPC Contract lays out detailed grounds for default

in Section 29.1, one of which is the failure to provide a performance security, and sets forth a notice and cure period, which "**must not be less than 28 days**." EPC Contract § 29.3(c)(2).

52. Mantoverde has given Ausenco Chile no notice of any alleged Default and by representing to ANZ Bank that Ausenco is in default, it will be making a material misrepresentation to ANZ Bank.

53. Second, prior to drawing any amount on the SLC, Mantoverde must first give formal notice to Ausenco Chile under Section 25.4(c) and must hold a conference with an authorized representative from Ausenco Chile regarding the potential draw on the SLC. Then, if the conference fails to resolve the concern, Mantoverde may proceed against the Performance *only* "by providing 2 days' prior written notice to the Contractor." EPC Contract § 25.4(g)(3).

54. Mantoverde has not given notice under Section 25.4(c), has not conferred with Ausenco Chile, and has not provided the requisite two-day notice before drawing.

55. Mantoverde has not declared Ausenco Chile in default under the EPC Contract, or complied with the requirements under the EPC Contract to draw upon the SLC, and any representation to ANZ to that effect, which will be required to draw upon the SLC, will be false and fraudulent in intent.

II.  **Ausenco Chile Will Suffer Irreparable Harm Absent Immediate Injunctive Relief**

56. Ausenco Chile will suffer concrete, irreparable harm if Mantoverde's draw on the SLC is not enjoined.

57. Specifically, unless enjoined, Mantoverde's wrongful presentment of the SLC will cause a series of financial hardships that risk causing permanent harm to Ausenco Chile.

58. First, Mantoverdo's draw will create an immediate reimbursement obligation, requiring Ausenco Chile and its parent-company, Ausenco, to pay ANZ Bank the amount of $50,229,961.30 within a matter of a few days.

59. Second, Ausenco Chile and Ausenco operate under credit facilities which have cross-default provisions. So, after Ausenco Chile and Ausenco are unable to marshal over $50 million in a few days to repay ANZ Bank, they will, by operation of the cross-default provisions, be in default with their lenders.

60. Third, a credit facility default triggers the rights of the Ausenco Chile and Ausenco credit facility lenders to immediate repayment of any amounts borrowed under the credit facility.

61. Fourth, Ausenco's liquidity would become instantly constrained—if not completely frozen. Cash flow is the lifeblood of a contractor, and with virtually no liquidity, funding available to progress operations for Ausenco's global construction projects would cease.

62. Fifth, with Projects grinding to a halt Ausenco's income stream would contract while its repayment obligations would be increasing, threatening Ausenco's ability to continue as a going concern.

63. This unexpected, immediate cash obligation of over $50 million would be a severe blow to the finances of Ausenco Chile and Ausenco Limited.

## CLAIM I
## INJUNCTIVE RELIEF IN AID OF ARBITRATION

64. A preliminary injunction in aid of arbitration "preserve[s] the status quo pending arbitration," and prevents arbitration from "becom[ing] a '*hollow formality*' if parties are able to alter irreversibly the status quo before the arbitrators are able to render a decision in the dispute." *Thales Avionics, Inc. v L3 Tech., Inc.*, 24-CV-112 (JGK), 2024 WL 815845, at *5 (S.D.N.Y Feb.

27, 2024) (quoting *Blumenthal v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 910 F.2d 1049, 1052-53 (2d Cir. 1990)).

65. In addition, Section 35.5 of the EPC Contract expressly contemplates judicial relief "in aid of an arbitration under the Parties' agreement."

66. As detailed in Ausenco Chile's Memorandum of Law, Ausenco Chile is entitled to injunctive relief requested: it faces irreversible financial damage; it has demonstrated that Mantoverde's draw on the SLC will be fraudulent; the balance of harms strongly favors Ausenco Chile; and, the public interest weighs heavily in favor of maintaining the solvency of Ausenco Chile and its parent company, Ausenco Limited, pending a decision of the emergency ICC arbitrator, or if necessary, a decision of a tribunal under the ICC arbitration rules to which Ausenco and Mantoverde agreed.

67. Ausenco Chile is submitting an initial *ex parte* application for injunctive relief due to the risk that prior notice would allow Mantoverde to engage in the improper conduct it has already threatened.

68. Accordingly, Ausenco Chile requests that the Court issue injunctive relief as follows:

   a. a temporary restraining order and preliminary injunction in aid of arbitration, enjoining Mantoverdo from drawing on the SLC;

   b. in the event that Mantoverdo has already submitted a draw on the SLC, a temporary restraining order and preliminary injunction in aid of arbitration, enjoining AZN Bank from honoring the presentment;

**WHEREFORE**, Petitioner Ausenco Chile respectfully requests that this Court enter an order awarding:

14

(1) a temporary restraining order and preliminary injunction in aid of arbitration, enjoining Mantoverdo from drawing on the SLC;

(2) in the event that Mantoverdo has already submitted a draw on the SLC, a temporary restraining order and preliminary injunction in aid of arbitration, enjoining AZN Bank from honoring the presentment;

(3) attorneys' fees and costs incurred in prosecuting this action; and

(4) any other relief that the Court finds just and proper.

Dated:  New York, New York
        August 29, 2024

Respectfully Submitted,

By: /s/ Lawrence A. Dany III

Attorneys for Plaintiff Ausenco Chile Ltda

JONES DAY
Lawrence A. Dany III
Thomas E. Lynch
Kristina F. Moore
250 Vesey Street
New York, NY 10281-1407
Telephone:  (212) 326-3939
ldany@jonesday.com
telynch@jonesday.com
kfmoore@jonesday.com